*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0167p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

HOMER MATTHEW SMITH and DEBORAH SMITH,
          *Plaintiffs-Appellants,*

          *v.*

ALLSTATE INSURANCE COMPANY,
          *Defendant-Appellee.*

No. 03-5589

>

Appeal from the United States District Court
for the Eastern District of Kentucky at Pikeville.
No. 02-00067—Danny C. Reeves, District Judge.

Argued: August 3, 2004

Decided and Filed: April 8, 2005

Before: NELSON and COOK, Circuit Judges; ROSEN, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** Lawrence R. Webster, LAWRENCE R. WEBSTER LAW OFFICE, Pikeville, Kentucky, for Appellants. Ernest H. Jones II, GERALDS, JONES, SHERROW, SCHRADER & RICE, Lexington, Kentucky, Roger L. Massengale, LAW OFFICES OF ROGER MASSENGALE, Paintsville, Kentucky, for Appellee. **ON BRIEF:** Lawrence R. Webster, LAWRENCE R. WEBSTER LAW OFFICE, Pikeville, Kentucky, for Appellants. Ernest H. Jones II, GERALDS, JONES, SHERROW, SCHRADER & RICE, Lexington, Kentucky, Roger L. Massengale, Garland L. Arnett, Jr., LAW OFFICES OF ROGER MASSENGALE, Paintsville, Kentucky, for Appellee.

          NELSON, J., delivered the opinion of the court, in which COOK, J., joined. ROSEN, D. J. (pp. 7-8), delivered a separate opinion dissenting in part.

_____

**OPINION**

_____

          DAVID A. NELSON, Circuit Judge. After a lengthy investigation of fire insurance claims presented by the plaintiffs, the defendant insurance company rejected the claims. The district court, which had jurisdiction based on diversity of citizenship, entered summary judgment in favor of the company. The court held that the plaintiffs' claims were barred by provisions in the insurance

_____
          [*] The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

policies that required suit to be brought within one year after the loss. The court further held that, on the facts presented, the company's invocation of the limitations provisions did not constitute bad faith.

We agree that the limitations provisions were valid under applicable state law (the law of Kentucky) and were enforceable against the plaintiffs in the circumstances presented here. The challenged judgment will be affirmed.

I

The plaintiffs, Homer and Deborah Smith, purchased homeowner's and landlord's insurance policies covering their residence and adjacent rental property in Pike County, Kentucky. The policies were issued by Allstate Insurance Company in January of 2000.

Using substantially identical terms, the policies spelled out the steps to be taken by an insured and by Allstate if a loss occurred. First, the insured had to give Allstate prompt notice of the loss, produce all records reasonably requested by the company, and submit to examination under oath if requested to do so. Within 60 days after the loss, the insured was also required to submit a signed and sworn proof-of-loss statement. If the policy covered the loss, Allstate had to notify the insured within 30 days after receiving the proof-of-loss statement whether the company chose to repair the damaged property or to pay for the loss. A covered loss was to be settled within 30 days after its amount was finally determined, whether by agreement, an appraisal award, or a court judgment.

The policies also contained a provision limiting the insureds' right to sue Allstate: "No suit or action may be brought against [Allstate] unless there has been full compliance with all policy terms. Any suit or action must be brought within one year after the inception of loss or damage."

The Smiths' insured properties were damaged by fire of suspicious origin on April 17, 2000. Mr. and Mrs. Smith promptly notified Allstate of the loss. On April 20, 2000, Allstate acknowledged receipt of notice and requested that the Smiths return a completed proof-of-loss form by July 13, 2000 — a date almost four weeks after the time limit specified in the policies. Allstate's April 20 letter expressly reserved "all rights, conditions and/or defenses under the policy of insurance including the policy one year limitation of suit condition." The Smiths signed a non-waiver agreement in which they agreed that Allstate's investigation of their claim "shall not waive or invalidate any of the terms or conditions of the policy."

The parties agreed that Mr. and Mrs. Smith would be examined under oath on July 13, 2000, the date by which the proof-of-loss statements were due. Allstate's lawyer requested that the Smiths bring to the examinations all records supporting their claim of loss. The examinations did not go forward at the agreed time, apparently because the Smiths had yet to return their proof-of-loss statements.

On August 10, 2000, Allstate sent the Smiths' lawyer another proof-of-loss form and advised him that the company could not conclude its investigation without the completed form. The letter further advised that the company would "continue to require strict adherence to all policy . . . terms and conditions" and reiterated that the company "specifically reserve[d] any and all rights and/or defenses . . . including the policy one year limitation of suit condition."

The Smiths finally gave Allstate their proof-of-loss statements on September 15, 2000. On October 3, 2000, Allstate paid Grundy National Bank, which held a mortgage on the Smiths' properties, approximately $91,000.

The Smiths' examinations under oath were rescheduled for October 19, 2000, but did not begin, for some reason, until November 17, 2000.  It was agreed that the examinations would be completed on December 19, 2000, but that date fell through because of  inclement weather. Unhappy with the delay, the Smiths' lawyer threatened to "file suit the day after Christmas unless someone pays this claim."  Allstate's lawyer responded with a suggestion that the examinations be completed on December 26, 2000.

The examinations were in fact concluded on that date, but Allstate's lawyer requested additional data from the Smiths.  Some (but not all) of the requested information was provided in January of 2001.  Although Mr. and Mrs. Smith were sent their examination transcripts promptly, they did not sign and return the transcripts until June 17, 2002.

Meanwhile, in September of 2001, Allstate completed its investigation and denied the Smiths' claim. Mr. and Mrs. Smith brought suit against Allstate in a Kentucky court on January 22, 2002 — more than one year and nine months after the fire.  Allstate removed the case to federal district court, filed an answer, and asserted a counter-claim for the money it had paid Grundy National Bank.

In due course the district court granted Allstate summary judgment on the plaintiffs' claim that the company had committed a breach of contract by not paying the claims in full.  The court held that the one-year limitations provision was valid and that Allstate had not waived its limitations defense.

In a separate order, the court granted summary judgment to Allstate on a bad faith claim asserted by the plaintiffs.  Finding that it would have been possible for the Smiths to comply with all of the prerequisites for suit and still bring their action within one year of the loss, the court concluded that Allstate's invocation of the limitations provision did not constitute bad faith.[1]

Allstate's counterclaim remained pending.  Having determined that there was no just cause for delay, however, the district court directed the entry of final judgment on the Smiths' claims. See Rule 54(b), Fed. R. Civ. P.  Mr. and Mrs. Smith perfected a timely appeal.

II

As we have seen, the Smith's insurance policies prohibited any suit from being brought more than "one year after the inception of loss or damage."  The fire loss occurred in April of 2000, and the Smiths did not sue Allstate until January of 2002.  If the one-year limitation was valid and enforceable, therefore, the Smiths' claims are barred.

Contract provisions limiting the time within which an insured may sue are generally valid under Kentucky law.  See, *e.g.*, *Edmondson v. Pennsylvania National Mutual Casualty Insurance Co.*, 781 S.W.2d 753, 756 (Ky. 1989); *Webb v. Kentucky Farm Bureau Insurance Co.*, 577 S.W.2d 17, 18-19 (Ky. Ct. App. 1978).  In fact, a Kentucky statute specifically allows foreign insurers[2] to limit the time for commencing actions against them. See Ky. Rev. Stat. § 304.14-370; *Webb*, 577

---

[1]The Smiths' complaint had alleged that the denial of the insurance claims was in bad faith.  At a hearing on Allstate's summary judgment motion, the district court wrote, the Smiths "explained the basis for their bad faith claim" in terms of its having been "impossible to comply with the policy provisions within the one-year limitations period for filing suit."

[2]A "foreign" insurer is an insurer formed under the laws of a state other than Kentucky.  See Ky. Rev. Stat. § 304.1-070.  It is undisputed that Allstate is a foreign insurer within the meaning of the Kentucky statutes.

S.W.2d at 18. The statute provides that such a contractual limitations period may not be "less than one (1) year from the time when the cause of action accrues." Ky. Rev. Stat. § 304.14-370.

The logic of this provision would seem to be that Allstate's one-year limitation period is not valid unless, as a matter of law, an insured's cause of action accrues on the date of his or her loss. Allstate, as might be expected, contends that the Smiths' cause of action accrued on the date of the fire. But there is a long line of Kentucky cases holding in a variety of contexts that a cause of action does not accrue until the plaintiff has the right to institute and maintain a suit. See *Philpot v. Stacy*, 371 S.W.2d 11, 13 (Ky. 1963); *Forwood v. City of Louisville*, 140 S.W.2d 1048, 1051 (Ky. 1940); *Carter v. Harlan Hospital Association*, 97 S.W.2d 9, 10 (Ky. 1936). And under the insurance contracts at issue here, the Smiths had no right to sue Allstate prior to "full compliance with all policy terms." We understand this to mean that the Smiths could not sue until they had taken each of the steps required of them under the policies — furnishing proof-of-loss statements, *e.g.*, and submitting to examination under oath. If cases such as *Philpot*, *Forwood*, and *Carter* are controlling in the insurance context, therefore, the Smiths' cause of action could not have accrued on the date of the fire.

We are not persuaded that the *Philpot* line of cases is controlling here. None of those cases involved Ky. Rev. St. § 304.14-370, and Kentucky courts have repeatedly enforced insurance contract provisions under which the time for suit began to run before the insured had a right to sue. In *Ashland Finance Co. v. Hartford Accident & Indemnity Co.*, 474 S.W.2d 364, 365-66 (Ky. 1971), for example, Kentucky's highest court gave effect to a one-year limitations period running from discovery of the insured's loss, even though the insurance contract provided that suit could not be brought for at least three months following the loss. In the subsequent case of *Edmondson v. Pennsylvania National*, similarly, the Kentucky Supreme Court saw "no question . . . as to the validity" of a policy provision that, like the provision at issue here, prohibited suit from being brought before compliance with all policy terms, yet still required suit to be brought within one year of the loss. See *Edmondson*, 781 S.W.2d at 754, 756. See also *Hale v. Blue Cross & Blue Shield of Kentucky*, 862 S.W.2d 905, 906, 907-08 (Ky. Ct. App. 1993), and *Webb*, 577 S.W.2d at 18-19, where similar policy provisions were enforced.[3]

We conclude that the limitations provision requiring the Smiths to sue Allstate within one year of their loss, while prohibiting suit during a portion of that year, is not inconsistent with Ky. Rev. Stat. § 304.14-370. Under Kentucky law, it appears, a cause of action for breach of an insurance contract may "accrue," in some sense, before the claimant is entitled to sue.

The limitation provision at issue here may nonetheless be unenforceable if it did not allow the Smiths a reasonable time to sue. See *Ashland Finance*, 474 S.W.2d at 366; *Webb*, 577 S.W.2d at 19. Accordingly, we turn now to the question of reasonableness.

The insurance policies, to repeat, barred the Smiths from suing Allstate before "there has been full compliance with all policy terms." We do not read this provision as meaning that there must have been compliance by both the insurer and the insured; what the provision means, rather, is that the insured must discharge his obligations under the policy before he can sue. (In any event, Allstate's obligations – to elect a method of settlement and to settle the claim – arise only when Allstate has determined that a loss is covered. Allstate made no such determination with respect to

---

[3]It is true, as the dissenting opinion points out, that neither *Ashland Finance* nor *Webb* arose out of a situation to which Ky. Rev. Stat. § 304.14-370 could have applied. These decisions show, however, that a limitations period prescribed in an insurance policy can begin to run, under Kentucky law, before the insured is entitled to sue. When read in conjunction with *Edmondson* and *Hale* — where the facts unquestionably made Ky. Rev. Stat. § 304.14-370 applicable — the cases demonstrate, in our opinion, that a cause of action on an insurance policy can accrue, under Kentucky law, before maturation of the insured's right to sue.

the Smiths' loss.) Nor do we think it matters, as far as our reasonableness analysis is concerned, whether the Smiths actually complied with all policy terms within one year of the fire. (It was not until June 17, 2002, the reader may recall, when the Smiths finally signed the transcripts of their examinations.) The focus, as we see it, must be on the period beginning when the Smiths could reasonably have been expected to complete their compliance with all policy terms and ending on the anniversary of the fire. The question is whether that period afforded the Smiths an adequate time for filing suit. We are satisfied that it did.

Allstate was prepared to take the Smiths' examinations under oath on July 13, 2000. The Smiths' dilatoriness in submitting their proof-of-loss statements delayed the examinations for about three months. There were additional delays, which might or might not be attributable to the Smiths in some measure, but the examinations were still completed less than nine months after the fire. If the Smiths had promptly produced all of the information requested by Allstate and had promptly signed the examination transcripts, they would have satisfied all prerequisites to suit about three months before the running of the one-year limitation period. And if the Smiths had submitted their proof of loss in timely fashion, the window would have been on the order of six months.

We see nothing unreasonable about an effective limitations period of six months. In *Ashland Finance*, where a period of six to nine months was held to be reasonable, Kentucky's highest court noted approvingly that "[m]any courts have upheld six-month limitations in [insurance] policies." *Ashland Finance*, 474 S.W.2d at 366. We conclude, therefore, that the limitations provision contained in the Smiths' insurance policies was valid under Kentucky law.

Mr. and Mrs. Smith advance two reasons why, in their submission, the limitations provision would not bar their claim even if the provision was legally valid. First, the Smiths argue that a limitations period in an insurance contract should be tolled from the time the insurer receives notice of a loss until the time it refuses to pay. This argument is not supported by Kentucky case law. As we have seen, Kentucky's highest court, in *Ashland Finance* and *Edmondson*, and its intermediate appellate court, in *Webb* and *Hale*, have given effect to limitations periods expiring one year after the insured's loss (or discovery of the loss). Neither these cases nor any other Kentucky case of which we are aware suggest that the limitations period can be tolled until the denial of the insured's claim. Absent some reason to suppose that the Kentucky courts would embrace such a rule, we must reject the Smiths' argument.

Second, the Smiths contend that principles of waiver or estoppel preclude Allstate from relying on the limitations provision. The Kentucky Supreme Court differentiated between waiver and estoppel in *Edmondson*:

> "Waiver is bottomed on a voluntary and intentional relinquishment of a known, existing right or power under the terms of an insurance contract. . . . Estoppel gives no effect to a presumed intention . . . . It offsets misleading conduct, acts, or representations which have induced a person entitled to rely thereon to change his position to his detriment." *Edmondson*, 781 S.W.2d at 755 (internal quotation marks omitted).

There is no evidence that Allstate intentionally waived its limitations defense. On the contrary, Allstate expressly and repeatedly reserved all defenses available under the policy, including the "one year limitation of suit condition." Allstate also executed a non-waiver agreement with the Smiths, which explicitly provided that the investigation of the Smiths' claim would not waive any of Allstate's rights. Obviously, it seems to us, there was no waiver here.

Nor is there any basis, in our view, for concluding that Allstate is estopped to rely on the limitations provision. There is no evidence that Allstate lulled the Smiths into inaction by promising to pay their claim. *Cf. Bates v. Grain Dealers National Mutual Fire Ins. Co.*, 283 S.W.2d 3, 5 (Ky. 1955) (finding "waiver" of a limitations defense where agents of the insurer told the insured that "the policies would be paid as soon as various questions of liability were determined"). Although Allstate did not deny the Smiths' claim until after the running of the one-year period, the company's protracted investigation suggested that there was a possibility the claim would not be paid. Indeed, Allstate's lawyer advised the Smiths' lawyer in December of 2000 that the "claim [was] still being evaluated and ha[d] not been accepted or denied."

Mr. and Mrs. Smith emphasize that Allstate's letter of April 20, 2000, set a date for return of the proof-of-loss statements that was four weeks later than the time prescribed by the policies. We do not think this can be equated with a representation that the Smiths could safely ignore the other time limits in the policies, particularly when the April 20 letter expressly reserved "all rights, conditions and/or defenses . . . including the policy one year limitation of suit condition."

III

Our conclusion that the contractual limitations provision was valid and enforceable – in particular, our determination that the limitations provision allowed the Smiths a reasonable time to sue Allstate – is dispositive of the Smiths' claim that invocation of the provision constituted bad faith on the part of Allstate. The Smiths' lawyer acknowledged at oral argument that judgment for Allstate on the contract claim would have to result in judgment for Allstate on the bad faith claim.

By the same token, we reject the Smiths' contention that the district court abused its discretion in staying discovery on the bad faith claim while the contract claim was pending. See *Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304-05 (6th Cir. 2003) (reviewing a stay of discovery for abuse of discretion). Because the merits of the bad faith claim depended on whether the limitations provision was valid, it was reasonable for the court to resolve the validity question before allowing the bad faith claim to proceed.

**AFFIRMED**.

---

**DISSENTING IN PART**

---

ROSEN, District Judge, dissenting, in part. I agree with the majority that the district court did not abuse its discretion in deciding to bifurcate the breach of contract and bad faith claims and in staying discovery on the bad faith claim pending disposition of the contract claim. However, I respectfully dissent from the majority's opinion affirming the district court's determination that the provisions in the insurance policies which required suit to be brought within one year after the loss were valid under Kentucky law and barred Plaintiffs' breach of contract claim.

Under Kentucky law, parties to an insurance contract may limit the time period within which to bring suit against an insurer so long as the limitation is reasonable and not otherwise prohibited by statute. *See Brown v. State Auto*, 189 F. Supp. 2d 665, 668 (W.D. Ky. 2001) (citing *Webb v. Kentucky Farm Bureau of Ins. Co.*, 577 S.W.2d 18-19 (Ky. App. 1978)). The majority here acknowledges that Ky. Rev. Stat. § 304.14-370 provides that a contractual limitation period limiting the time within which an insured may bring suit against a foreign insurer may not be "less than one (1) year from the time when the cause of action accrues." KRS § 304.14-370. The majority further acknowledges that there is a long line of Kentucky cases holding that a cause of action does not "accrue" until the plaintiff has the right to institute and maintain a suit. *See e.g., Philpot v. Stacy*, 371 S.W.2d 11, 13 (Ky. 1963); *Forwood v. City of Louisville*, 140 S.W.2d 1048, 1051 (Ky. 1940); *Carter v. Harlan Hospital Association*, 97 S.W.2d 9, 10 (Ky. 1936).

Despite this acknowledgment, the majority finds that the contractual limitations provision requiring the Smiths to sue Allstate "within one year of their loss," as opposed to within one year from the time when their cause of action accrued, as is seemingly required by the statute, to be valid and enforceable under Kentucky law. In reaching this conclusion, the majority relies upon Kentucky decisions which pre-date KRS § 304.14-370 and/or neither discuss, nor even refer to, the statute. In my view, the plain language of the statute should control, and since the Smiths could not have sued Allstate for breach of contract until their insurance claim was denied by the insurer, their suit -- which was filed within four months of Allstate's denial of their claim -- should not have been deemed time-barred by Allstate's contractual provision which, by its terms, would deem Plaintiffs' action barred five months before they could have brought suit. In my view, this result runs afoul of the obvious legislative intent of KRS § 304.14-370.

The first rule of statutory construction is that there is no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. *Baum v. Madigan*, 979 F.2d 438, 441 (6th Cir. 1992) (citing *United States v. American Trucking Ass'ns, Inc.*, 310 U.S. 534, 543, 60 S.Ct. 1059 (1940). Statutory words are uniformly presumed to be used in their ordinary and usual sense and with the meaning commonly attributed to them. *See Caminetti v. United States*, 242 U.S. 470, 485-86, 37 S.Ct. 192, 194 (1917)). As this Court has held, "[i]t is an elementary rule of statutory construction that we initially look to the plain language of the statute to determine the meaning of legislation." *McBarron v. S & T Indus., Inc.*, 771 F.2d 94, 97 (6th Cir. 1985); *accord Bradley v. Austin*, 841 F.2d 1288, 1293 (6th Cir. 1988).

Here, the intent of the Kentucky legislature in using the language "from the time when a cause of action accrues," is clear. The phrase has a plain and ordinary meaning. Both the Kentucky Court of Appeals and the Kentucky Supreme Court have stated that "the accrual of a cause of action means the right to institute and maintain a suit." *City of Covington v. Patterson*, 230 S.W. 542, 543

(Ky. App. 1921).[1]  In law or in equity, a cause of action arises when -- and only when -- the aggrieved party has a right to apply to the proper tribunal for relief.  *Patterson*, 230 S.W. at 543. "A true test, therefore, to determine when a cause of action accrues, is to ascertain the time and place when the person could have first maintained an action to a successful result."  *Id.*  Plaintiffs here could not have filed suit until Allstate rendered an adverse decision on their insurance claim.  Had Plaintiffs filed suit before Allstate denied their claim, Allstate surely would have quickly moved for dismissal of the suit as premature.[2]

The majority cites *Ashland Finance Co. v. Hartford Accident & Indemnity Co.*, 474 S.W.2d 364, 356-66 (Ky. 1971), as support for its determination of validity of the contractual "within one year of the loss" limitation.  Although the Kentucky Court of Appeals rendered its decision in *Ashland* in 1971, the trial court's order dismissing the plaintiff's action as time-barred pursuant to a one-year contractual limitations period running from discovery of the insured's loss, which was the subject of the appeal, was rendered in 1967, *i.e.*, more than three years prior to the enactment of KRS § 304.14-370.  Furthermore, nowhere in *Ashland* does the Kentucky court construe or even reference the statute.  Similarly, KRS § 304.14-370 was neither discussed nor mentioned in *Edmonson v. Pennsylvania National Mutual Casualty Ins. Co.*, 781 S.W.2d 753 (Ky. 1989).  Nor was the statute discussed in *Hale v. Blue Cross & Blue Shield of Kentucky*, 862 S.W.2d 905 (Ky. Ct. App. 1993).  And, *Webb v. Kentucky Farm Bureau Ins. Co.*, 577 S.W.2d 17 (Ky. Ct. App. 1978), which is also cited by the majority, did not involve a "foreign" insurer and, thus, as the court there noted, KRS § 304.14.370 was not applicable to the question presented in that case.  *See Webb*, 577 S.W.2d at 18.

Clearly, had the Kentucky legislature wished the statute of limitations to have run from the time the loss occurred, it could have -- and presumably would have -- said so directly.  It did not, instead rather unambiguously opting to begin the statute of limitations from the "time when the cause of action accrues."  For a federal appellate court sitting in diversity to effect a judicial amendment to this statute does violence not only to notions of judicial deference to legislative policy decisions, but also to notions of federal-state comity.

In light of the clear language of KRS § 304.14-370 and the absence of any legislative history or Kentucky case law construing the statute to mean something other than what it plainly says, I would reverse the district court's dismissal of Plaintiffs' contract claim as time-barred.

---

[1]There is no Kentucky case law which interprets the phrase "from the time when a cause of action accrues" to mean "from the time when loss occurs."

[2]To be sure, the Smiths were dilatory in complying with the policy terms which accounted for some of the delay in the processing of their claim: They did not promptly provide Allstate with their proof-of-loss statements nor did they promptly provide the insurer with additional requested deposition information.  And, there is some evidence suggesting that the Smiths might well have realized at some point before Allstate's formal denial of their claim that their claim would not be honored.  But Allstate is not entirely blameless, either.  The insurer delayed the claim process by changing deadlines and postponing the Smiths' depositions.  In any event, the parties' dilatory conduct should not countenance a bright line ruling that the statute of limitations begins to run on the date of the loss.  At best, it suggests that the case should be remanded to the district court to ascertain when, under the circumstances presented, the Smiths' cause of action should be deemed to have accrued.